UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANAZ NASERI,<br><br>        Plaintiff,<br><br>    v.<br><br>UNITED PARCEL SERVICE, INC.,<br><br>        Defendant. | Case No.  25-cv-09638-RFL<br><br>**ORDER DENYING MOTION TO REMAND, AND GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: Dkt. Nos. 6, 7, 12 |

Sanaz Naseri, who is proceeding without the benefit of counsel, filed this case against her employer, United Parcel Service, Inc. ("UPS"), in state court.  Naseri raises seven claims against UPS, including discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2, 2000e-3; discrimination, harassment, retaliation, failure to accommodate, and failure to prevent in violation of California's Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12940; failure to accommodate in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112; intentional infliction of emotional distress ("IIED"); and violation of unspecified Labor Code sections.  UPS removed Naseri's case to this Court.  Naseri moves to remand, while UPS moves to dismiss.  As further described below, Naseri's motion to remand is **DENIED** and UPS's motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**.  Dismissal is with leave to amend.

*Motion to Remand.*  A defendant can remove a case filed in state court to federal court if a federal court has original jurisdiction over the case.  28 U.S.C. § 1441(a).  Federal courts have two primary bases for original subject-matter jurisdiction: federal question jurisdiction and diversity jurisdiction.  §§ 1331, 1332.  Federal question jurisdiction exists for claims "arising

1

under the Constitution, laws, or treaties of the United States." § 1331.  Diversity jurisdiction exists when there is complete diversity of citizenship (no plaintiff is a citizen of the same state as any defendant) and the amount in controversy exceeds $75,000.  § 1332(a).  Finally, if a court has original jurisdiction over some claims, it can exercise supplemental jurisdiction over other claims that are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."  § 1367(a).

There is federal question jurisdiction over Naseri's Title VII and ADA claims, as those claims arise under federal law.  Having established jurisdiction over the federal claims, there is supplemental jurisdiction over Naseri's remaining state law claims.  All of Naseri's claims are based on the same set of facts—her experience of discrimination, harassment, and retaliation at UPS.  Accordingly, her state law claims form part of the same case or controversy since they "derive from a common nucleus of operative fact" and she would "ordinarily be expected to try them in one judicial proceeding."  *See Arroyo v. Rosas*, 19 F.4th 1202, 1209 (9th Cir. 2021) (citation omitted).  And there is no reason to decline to exercise supplemental jurisdiction.  *See* § 1367(c).  Since Naseri's federal and state law claims generally mirror each other, her state law claims would not substantially predominate over her federal law claims.  *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).[1]

While Naseri argues that federal court jurisdiction "cannot fully address or compensate for [her] state law causes of action," this Court can adjudicate and provide a remedy for her causes of action arising under California law.  (*See* Dkt. No. 6 at 5.)[2]  Similarly, so long as

---

[1] Additionally, there is diversity jurisdiction.  First, Naseri and UPS are citizens of different states.  UPS alleges that Naseri is a citizen of California, and it is a citizen of Ohio and Georgia. (Dkt. No. 1 ¶¶ 21, 23; § 1332(c)(1).)  Naseri seems to agree.  (Dkt. No. 18 ¶ 13.)  Though Naseri argues that UPS failed to provide evidence of its corporate citizenship, UPS did not need to provide evidence unless and until she factually challenged its allegations, which she has not.  *See Ehrman v. Cox Commc'ns, Inc.*, 932 F.3d 1223, 1227–28 (9th Cir. 2019).  Next, UPS alleges that Naseri's damages may exceed $100,000 based on past jury awards.  (Dkt. No. 1 ¶¶ 27–32.)  That is a "plausible allegation" that the amount in controversy exceeds $75,000.  *See Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014).

[2] All citations to page numbers in filings on the docket refer to ECF pagination.

federal subject-matter jurisdiction exists, federal and state courts share concurrent jurisdiction over state law claims.  State courts do not have "superior jurisdiction" over employment discrimination or personal injury claims.  (*See id.* at 6.)  Accordingly, the fact that some of Naseri's claims arise under California law does not require remand.

Removal also requires a defendant to follow a specific procedure.  Initially, a defendant files a notice of removal in federal court containing "a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant."  28 U.S.C. § 1446(a).  The defendant must file this notice within 30 days after receiving an initial pleading making removability clear.  § 1446(b)(1).  To effect removal, the defendant must then "[p]romptly" (1) "give written notice thereof to all adverse parties"; and (2) "file a copy of the notice with the clerk of such State court."  § 1446(d).  After those steps are complete, "the State court shall proceed no further unless and until the case is remanded."  *Id.*

UPS timely completed each of those steps.  First, UPS was served with Naseri's complaint on October 10, 2025.  (Dkt. No. 6 at 3; Dkt. No. 14-1 ¶ 3.)  UPS filed its notice of removal with this Court on November 7, less than thirty days after it received UPS's complaint.  (*See* Dkt. No. 1; § 1446(b)(1).)  While Naseri argues that removal only occurred after she attempted to take UPS's default on November 10, this Court indisputably received a copy of the notice of removal on November 7, so removal was timely.  (*See* Dkt. No. 1.)

Second, the notice of removal contained all the documents UPS had been served with.  (*See* Dkt. No. 1 ¶ 1; Dkt. No. 1-1; § 1446(a).)  Naseri argues that the notice should have included an October 10 proof of service and her November 10 request for default.  (Dkt. No. 13 at 1.)  There is no evidence that UPS was served with the October 10 proof of service, since it demonstrates only that UPS was served with all preceding case documents.  (*See id.* at 10–12.)  Nor does Naseri state that she served the proof of service on UPS.  And the November 10 request for default did not exist when UPS filed its notice of removal.  (*See id.* at 16–18.)  Since there is no evidence that UPS was served with either document before removal, they did not need to be attached to the notice of removal.  *See* § 1446(a).

Third, UPS promptly gave Naseri notice of removal.  UPS's attorney declared that his office served Naseri with a copy of the notice of removal on November 7, the same day it was filed with this Court.  (Dkt. No. 14-1 ¶¶ 4–5.)  Naseri agrees she received an email from UPS that day with a copy of the notice of removal.  (Dkt. No. 6 at 3–4.)  However, she argues her notice was defective because it did not contain a federal case number, docket stamp, or judge's name.  (*Id.*)  "Promptly after the filing of [the] notice of removal," a removing defendant must "give written notice *thereof*" to adverse parties.  *See* § 1446(d) (emphasis added).  By its plain language, that requirement refers to the fact of filing the notice of removal, not any additional information.  In any event, even if that information were required, Naseri states that she received an email from UPS on November 12 informing her that "Case No. 25-cv-09638-KAW was opened."  (Dkt. No. 6 at 4, 19–20.)  That notice would still be prompt, since it was only five days after the notice of removal was filed.  (*See id.*; § 1446(d).)

Fourth, UPS promptly filed a copy of the notice of removal with the state court.  UPS's attorney declared that his office filed it with the state court on the same day it was filed with this Court.  (Dkt. No. 14-1 ¶¶ 4–5.)  Naseri argues that the state court was never properly notified of removal.  But her request to take UPS's default was denied on November 13 because there was "a notice of removal filed in this case," which indicates the state court had received notice of UPS's removal.  (Dkt. No. 13 at 15.)  Even if UPS had waited until November 10 to file a copy of the notice of removal with the state court, as Naseri argues, UPS would still have "[p]romptly" filed the notice of removal.  *See* § 1446(d).

Finally, Naseri argues that UPS untimely filed its opposition to her motion to remand.  UPS's opposition was originally due on November 28.  (Dkt. No. 6.)  When Naseri filed her "Combined Motion to Remand[] [and] Opposition to Defendant's Motion to Dismiss," the Clerk docketed it as a separate motion to remand with UPS's opposition due December 1.  (Dkt. No. 12.)  UPS filed its opposition on December 1, as instructed.  (Dkt. No. 14.)  Under these circumstances, the Court declines to treat UPS's opposition as untimely.

There is subject-matter jurisdiction over this case, and UPS followed the proper

procedure to remove it.  Accordingly, Naseri's motion to remand is **DENIED**.

***Motion to Dismiss.***  To survive a motion to dismiss, a plaintiff must plead "sufficient allegations of underlying facts" to "give fair notice and to enable the opposing party to defend itself effectively" as well as to "plausibly suggest an entitlement to relief." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011); *see also Mattioda v. Nelson*, 98 F.4th 1164, 1174 (9th Cir. 2024).  While pro se complaints must be liberally construed, a court cannot "supply essential elements of a claim that are absent from the complaint." *Boquist v. Courtney*, 32 F.4th 764, 774 (9th Cir. 2022).  In employment discrimination cases, while a plaintiff need not "plead facts establishing a prima facie case," courts "nevertheless look to those elements to analyze a motion to dismiss, so as to decide, in light of judicial experience and common sense, whether" a claim is plausible.  *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 511 (2002); *Achal v. Gate Gourmet, Inc.*, 114 F. Supp. 3d 781, 796–97 (N.D. Cal. 2015).  Each of Naseri's claims is analyzed below.  To summarize, Naseri has stated a plausible FEHA harassment claim based on national origin.  While facts scattered throughout the exhibits to Naseri's complaint suggest that some of her remaining claims may ultimately be viable if she provides more information, she is missing crucial factual allegations about those claims in the current version of her complaint.

*Title VII and FEHA Discrimination.*  The prima facie case for a discrimination claim is: (1) membership in a protected class; (2) qualification for the position; (3) an adverse employment action; and (4) similarly situated individuals outside the protected class were treated more favorably, or other circumstances surrounding the adverse employment action create an inference of discrimination. *Hittle v. City of Stockton, California*, 101 F.4th 1000, 1011–12 (9th Cir. 2024).  Naseri alleges she was qualified for her position.  (Dkt. No. 1-1, Ex. A ("Compl.") ¶ 7.)  Naseri further alleges that she was discriminated against because of her Iranian national origin and disability.  (Compl. ¶¶ 4, 20.)  National origin is a protected class under both Title VII and FEHA.  *See* 42 U.S.C. § 2000e-2(a); Cal. Gov't Code § 12940(a).  However, disability is only a protected class under FEHA, not under Title VII.  *See id.*  Thus, to the extent Naseri's discrimination claim is based on her disability, that portion of her claim can proceed only under

FEHA and not Title VII.  Moreover, Naseri has not pled how she has a disability within the meaning of FEHA, as she must.  *See Bagatti v. Dep't of Rehab.*, 97 Cal. App. 4th 344, 353 (2002); Cal. Gov't Code § 12926(j), (m) (defining mental and physical disabilities).

Naseri has further failed to allege what adverse employment actions were discriminatory or how those adverse employment actions give rise to an inference of discrimination.  Naseri alleges that after she reported discrimination, UPS retaliated against her by "blocking promotions, fabricating warnings, isolating Plaintiff, and refusing reasonable accommodations." (Compl. ¶ 10.)  Naseri attaches a document alleging she was issued at least one warning because of discrimination, but it is unclear whether she alleges any other actions were discriminatory. (*Id.* at 41–42.)  Naseri further fails to allege how the discriminatory comments about her Iranian origin related to adverse employment actions against her.  (*See id.* ¶ 9.)  For instance, Naseri has not alleged who issued the written warnings, negative performance reviews, and promotion decisions, nor how they were connected with the discriminatory comments.  (*See id.* at 41–42.)  Also, although she attaches a document alleging a "double standard" in which the absenteeism rules were enforced more leniently as to non-Iranians, she does not specify how those others were similarly situated to her (such as whether they have similar positions and their attendance issue was similar to hers in the potential effect on their work).  (*See id.* at 15, 41; *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003), as amended (Jan. 2, 2004).)

*FEHA Harassment.*  The prima facie case for a harassment claim is: (1) membership in a protected class; (2) unwelcome harassment; (3) the harassment was based on the plaintiff's protected status; and (4) the harassment was sufficiently severe or pervasive that it unreasonably interfered with plaintiff's work performance by creating an intimidating, hostile, or offensive work environment.  *Ortiz v. Dameron Hosp. Assn.*, 37 Cal. App. 5th 568, 581 (2019).  While the severe or pervasive requirement was previously "quite a high bar for plaintiffs to clear," the Legislature in 2019 clarified that harassment need only "disrupt the victim's emotional tranquility in the workplace, affect the victim's ability to perform the job as usual, or otherwise interfere with and undermine the victim's personal sense of well-being."  *Beltran v. Hard Rock*

*Hotel Licensing, Inc.*, 97 Cal. App. 5th 865, 878 (2023); Cal. Gov't Code § 12923(a).  Moreover, the Legislature declared that a "single incident of harassing conduct is sufficient to create a triable issue regarding the existence of a hostile work environment if the harassing conduct has unreasonably interfered with the plaintiff's work performance or created an intimidating, hostile, or offensive working environment."  Cal. Gov't Code § 12923(b).

Naseri plausibly alleges national origin harassment.  She alleges incidents involving her national origin throughout her complaint, including that she was told to "go back to Iran" in April 2024 by a manager, having her apparent offense at her supervisor's jokes in September 2024 dismissed because she was "born in Iran," and being "mocked about her accent" in July 2025.  (Compl. ¶¶ 9, 17; Compl. at 13, 18, 41.)  She alleges the harassment resulted in "medical crises and a workers' compensation injury."  (*Id.* ¶ 12.)  Under the totality of the circumstances, Naseri has alleged more than "[s]imple teasing, offhand comments, and isolated incidents."  *See Quilala v. Securitas Sec. Servs. USA, Inc.*, 117 Cal. App. 5th 75, 86 (2025) (citation omitted).

To the extent that Naseri's harassment claim is based on other acts or protected classes, she must clearly identify those acts and protected classes.  The complaint alleges that she suffered "sexual and physical abuse" by a manager in the 2019–2021 time period.  (Compl. ¶ 8.)  However, Naseri does not allege whether the abuse continued beyond September 17, 2021, and whether the abuse was a continuing course of conduct, such that her complaint was timely under Cal. Gov't Code Sec. 12960(e)(5).  Nasseri also attaches a letter to her complaint detailing other acts, including that a coworker called her "the B-word over the radio" and filmed her without consent, and that there was a "suicide card left at [her] desk."  (*Id.* at 18.)  Nasseri does not provide a time frame when these acts occurred, though.  To the extent that Naseri seeks to pursue a harassment claim based on other acts or other protected classes, the amended complaint needs to identify those events giving rise to Naseri's harassment claim, including when they occurred, and how they relate to the protected class(es) at issue.

*Title VII and FEHA Retaliation.*  The prima facie case for a retaliation claim is: (1) protected activity; (2) an adverse employment action; and (3) a causal link between the two.  *Ray*

*v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000) (Title VII); *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042 (2005) (FEHA).

Naseri alleges she engaged in protected activity by reporting harassment, discrimination, and retaliation. (*See* Compl. ¶¶ 9, 22; *Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 506 (9th Cir. 2000).) Similarly, she alleges adverse employment actions of "blocking promotions, fabricating warnings, isolating Plaintiff, and refusing reasonable accommodations." (*See* Compl. ¶ 10.) However, Naseri does not allege a causal link between her protected activity and adverse employment actions. She only alleges that "UPS management retaliated by" taking the above actions. (*Id.*) That bare conclusion is not enough. She needs to allege facts that support the conclusion that these actions were taken in retaliation for her reports. That could be based on "circumstantial evidence," such as "the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision." *See Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987). While Naseri's charge of discrimination asserted that she was not selected for promotions, received a written warning, and received a negative performance evaluation shortly after reporting discrimination in June 2024, she does not allege who was involved in making those decisions nor whether they knew that she had reported discrimination. (*See* Compl. at 41–42.) Similarly, other potential instances of retaliation, including an advisement to "start issuing [Naseri] false written warnings"; denial of promotions; and a "false warning letter" issued shortly after Naseri learned her complaints were being investigated, lack either an allegation about the temporal proximity of the actions to her protected activity or the decisionmaker's knowledge of her protected activity. (*See id.* at 13, 18, 37–39.) Accordingly, without these additional pieces of information, the current version of the complaint fails to state a retaliation claim.

*ADA and FEHA Failure to Accommodate.* The prima facie case for a failure to accommodate claim under either the ADA or FEHA is: (1) disability within the meaning of the respective statutes; (2) qualification to perform the essential functions of the job with reasonable

8

accommodation; and (3) failure to reasonably accommodate the plaintiff's disability.[3]  *Allen v. Pac. Bell*, 348 F.3d 1113, 1114 (9th Cir. 2003) (per curiam); *Snapp v. United Transportation Union*, 889 F.3d 1088, 1095 (9th Cir. 2018); *Wilson v. Cnty. of Orange*, 169 Cal. App. 4th 1185, 1192 (2009).

As discussed with Naseri's FEHA discrimination claim, she has failed to allege how she has a disability as defined by the ADA or FEHA.  Naseri generally alleges that UPS "refused reasonable accommodations for [her] documented medical needs."  (Compl. ¶ 23.)  She also alleges that she needed an "approved medication," but does not explain how the medication relates to a disability she has.  (*Id.* ¶ 14.)  Such vague allegations are insufficient to show Naseri has a disability, since disability is defined in these statutes "with specificity as a term of art," so "a person may be 'disabled' in the ordinary usage sense . . . yet still not be 'disabled' under the ADA."  *See Sanders v. Arneson Prods., Inc.*, 91 F.3d 1351, 1354 n.2 (9th Cir. 1996).  If Naseri is alleging that she was denied additional accommodations beyond breaks for her medication, she must also specifically identify what accommodations she requested and how they were denied. For instance, if Naseri is alleging that she was denied an accommodation that would change her shifts and require email-only communication, she must explain what she requested and how UPS denied these accommodations.  (*See* Compl. at 21.)

*FEHA Failure to Prevent.*  The elements of a failure to prevent claim are: (1) harassment, discrimination, or retaliation in the course of employment; (2) the employer failed to take all reasonable steps to prevent the harassment, discrimination, or retaliation; (3) the plaintiff was harmed; and (4) the employer's failure to take all reasonable steps to prevent the harassment, discrimination, or retaliation was a substantial factor in causing that harm.  *Kruitbosch v. Bakersfield Recovery Servs., Inc.*, 114 Cal. App. 5th 200, 225 (2025) (unpublished text citing

---

[3] It is not clear whether an adverse employment action is a required element of a failure to accommodate claim.  *Compare Exby-Stolley v. Bd. of Cnty. Commissioners*, 979 F.3d 784, 809 (10th Cir. 2020) (*en banc*) (describing "[t]he predominant view" of the Ninth Circuit to be that it "is not a requisite element"), *with id.* at 832–33 (McHugh, J., dissenting) (arguing Ninth Circuit precedent "points in the other direction").  Because other deficiencies in the pleadings already mandate dismissal, this Order does not reach this question.

CACI No. 2527). If a plaintiff has not alleged an underlying FEHA violation, they cannot state a failure to prevent claim. *Miller v. Dep't of Corr. & Rehab.*, 105 Cal. App. 5th 261, 285 (2024). Naseri has failed to state a discrimination, retaliation, or failure to accommodate claim under FEHA, as explained above, so she also fails to state a failure to prevent claim on these bases. *See id*. While Naseri has alleged a plausible harassment claim, she has not specifically alleged what UPS knew about her harassment, when it learned this information, what it failed to do that would have prevented harassment after it found out, or how that was a substantial factor in causing her harm. Accordingly, without more information, her complaint has not stated a failure to prevent claim.

*Intentional Infliction of Emotional Distress.* The elements of an IIED claim under California law are: "(1) extreme and outrageous conduct . . . with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1001 (1993) (citation omitted). While employment discrimination can sometimes rise to the level of extreme and outrageous conduct, a plaintiff must allege something more than an adverse personnel action due to discrimination. *Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 80 (1996).

Naseri fails to state a claim for IIED because it is unclear what conduct she alleges gives rise to that claim. She makes only a conclusory allegation that UPS's "extreme and outrageous conduct has caused severe emotional harm." (Compl. ¶ 25.) If her claim is based solely on her current allegations of national origin discrimination, she may not have alleged extreme and outrageous conduct. *See Cornell v. Berkeley Tennis Club*, 18 Cal. App. 5th 908, 945 (2017) (holding that finding a triable harassment claim did not "compel reinstatement of the claim for intentional infliction of emotional distress"). With additional facts, such as the position of the harassers; the context of the harassment; and whether there were further instances of harassment, she might plausibly allege extreme and outrageous conduct. That clarity would be particularly

important for Naseri's other allegations of harassment, such as an unspecified date when she found a "suicide card" at her desk. (Compl. at 18.)  Furthermore, if Naseri's claim is based on other factual allegations such as "sexual and physical abuse by a manager," she likely has alleged extreme and outrageous conduct.  (*See id.* ¶ 8; *Rojo v. Kliger*, 52 Cal. 3d 65, 71, 81 (1990) (employees could bring IIED claims against employer who demanded sexual favors).)  But because it is not clear which of Naseri's allegations give rise to her IIED claim, it is not adequately pled.  Moreover, the lack of clarity prevents analyzing whether the acts of Naseri's coworkers and supervisors can be imputed to UPS.  *See, e.g.*, *Murillo v. Rite Stuff Foods, Inc.*, 65 Cal. App. 4th 833, 852 (1998) (noting that an employer is not liable under the doctrine of respondeat superior for an employee's acts outside the scope of their employment, but holding that an employer could still be held liable if they ratify those acts by, for instance, "continu[ing] the wrongdoer in service" after "knowledge of or opportunity to learn of the agent's misconduct").  Accordingly, Naseri has not stated an IIED claim.

*Labor Code Violations*.  Naseri does not specify which sections of the California Labor Code she alleges UPS to have violated.  Naseri only alleges that UPS "failed to pay all wages due, maintained unsafe conditions, and retaliated for wage and safety complaints."  (Compl. ¶ 26.)  Her allegations are not sufficiently pled.  Naseri appears to be referencing union grievances over her vacation and overtime pay.  (*Id.* at 25–28, 33–36, 40.)  To allege a plausible claim, Naseri must allege which of her wages were not timely paid and what part of the Labor Code that violated.  She must also support her remaining allegations of unsafe conditions and retaliation with facts and a theory of how those actions violated a specific part of the Labor Code.

*Conclusion.*  For the forgoing reasons, Naseri's motion to remand is **DENIED** and UPS's motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**.  Naseri's claim for national origin harassment under FEHA survives, while all other claims are dismissed.  Because amendment does not necessarily appear futile, dismissal is with **LEAVE TO AMEND**.  Naseri may file an amended complaint addressing the deficiencies identified above by **March 23, 2026**.

The amended complaint should list each claim that Naseri intends to assert and identify what facts support each claim. Though Naseri may attach exhibits to her amended complaint, she should explain their relevance in her complaint. Because an amended complaint completely replaces the previous complaints, Naseri must include in her amended complaint all the claims she wishes to present (including her FEHA national origin harassment claim) and all of the defendants she wishes to sue. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992). Naseri may not add new claims or parties without leave of the Court or stipulation by the parties pursuant to Federal Rule of Civil Procedure 15.

**IT IS SO ORDERED.**

Dated: February 6, 2026

RITA F. LIN
United States District Judge